

**VIA ECF**

August 26, 2020

The Honorable Ronnie Abrams,
 United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> The Court has determined that a trial date of December 14, 2020 is not feasible. The trial is thus scheduled for January 4, 2021. The motion schedule will remain in place. A final pretrial conference is scheduled for December 29, 2020 at 11:30 a.m. Pretrial submissions shall be due by December 8, 2020, Responses by December 15, 2020 and any replies by December 22, 2020.  Time is excluded until January 4, 2021, under the Speedy Trial Act, pursuant to 18 U.S.C. Section 3161(h)(7)(A).
>
> SO ORDERED.
>
> _____
> Ronnie Abrams, U.S.D.J.
> August 31, 2020

Re:   *United States v. Ajit Singh, et al.*, Case No. 19-cr-339 (RA)

Dear Judge Abrams:

This firm represents Defendant Ajit Singh in the above-referenced matter.  Please accept this letter in support of Mr. Singh's request for a trial as soon as possible.  Mr. Singh's son/co-defendant, Gulsahil Singh, fully joins in this request.[1]

Mr. Singh understands that pursuant to the SDNY's July 6, 2020 Operations Memorandum, jury trials are suspended.  It appears, however, that the SDNY plans a limited resumption of criminal jury trials in the near future.  Even during the unprecedented challenges facing the criminal justice system now due to COVID-19 (and in part because of those challenges), the unique set of circumstances in our case justify an accelerated trial date.

The following background is based upon the discovery provided by the Government and/or publicly available documents.  On May 7, 2019, the Government obtained a Sealed Indictment against Ajit Singh and his two sons, charging four counts of conspiracy and substantive offenses related to the importation of two pharmaceuticals:  Tramadol and Tapendadol.  The charges do not carry mandatory minimum sentences.  Also on May 7, 2019, the Government obtained sealed arrest warrants based on its Sealed Indictments.  Seven months later, on December 10, 2019, Mr. Singh and his son were arrested in New York City.

Before the Government's Cooperating Source ("CS") contacted them in connection with this case, neither Ajit Singh nor his son had ever been in the United States.  Moreover, before the CS contacted them, neither Ajit Singh nor his son conducted any business in the United States, even though they operate a pharmaceutical export company in India.

During the seven-months following the Sealed Indictment, the CS worked with the State Department to help get visas approved for Ajit Singh and his son.  The CS advised Mr. Singh and his son on how to fill out the visa application.  The CS contacted the United States Embassy

---

[1] The remaining co-defendant, Fatem Singh, is also Ajit's son, but he remains in India.

mabalaw.com | 570 Broad Street, Suite 900 Newark, NJ 07102 | 973-200-4066

to obtain updates.  The CS offered to have the (fictitious) physician for whom he worked write a letter to the United States Embassy to expedite the visa process.  The CS notified Mr. Singh and his son when their visas were approved and told them they should check their email for an official notification.  The CS paid for the Singh's hotel room and sent them a confirmation from the Hilton Garden Inn in Midtown Manhattan.

On December 10, 2020, Mr. Singh and his son arrived at Newark Liberty International Airport in Newark, New Jersey.  The CS had arranged for a car to pick them up.  They were driven to New York City and, while stopped a red light, the car was surrounded by federal law enforcement, and Mr. Singh and his son were arrested.  They were in custody until December 13, 2020, at which time, they were released subject to home confinement and electronic monitoring, with which they have been fully compliant.

Since their release, Mr. Singh and his son have been surviving based upon the largesse of the Sikh community in Long Island, specifically the worshipers at the Sikh Temple, Guru Nanak Darbar Of Long Island (Sikh Gurudwara), located in Hicksville, New York.  Essentially, they are living at the modest home of the Temple's Granthi, along with seven members of his family for the past nine months.

Except for each other, Ajit Singh and his son have no family in the United States.  Just a few weeks ago, Gulsahil Singh's wife gave birth to their first child, a daughter named Sahjas Kaur.  He has, of course, never seen his daughter and will not until this case is resolved.  Ajit Singh and his son are unable to work in the United States because they are here on tourist visas (which had been suggested by the CS, who shepherded the applications through the process).  To make matters worse, Ajit Singh has numerous documented medical conditions.  Although Mr. Singh has access to medical care in the United States, he cannot be treated by his physicians who are most knowledgeable about his condition and care, and with whom he has an established doctor/patient relationship.

As the Supreme Court stated in *Klopfer v. North Carolina*, "[t]he history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."  386 U.S. 213, 226 (1967).  *See also United States v. Tigano*, 880 F.3d 602, 610-11 (2d Cir. 2018) (quoting *Klopfer* and discussing the history of the Speedy Trial rights granted by the Sixth Amendment).  As the United States Court of Appeals for the Second Circuit stated in *United States v. Black*:

> The right to a speedy trial primarily protects three interests of criminal defendants: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966) ("This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.").

918 F.3d 243, 254 (2d Cir. 2019).

In *Klopfer*, the Court acknowledged the importance of an expeditious trial even when – as here – a defendant is not in custody:

> The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will.' The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure condoned in this case by the Supreme Court of North Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States.

*Id.* at 222.  Mr. Singh and his son respectfully submit that their current situation warrants consideration under the Speedy Trial Clause.

Moreover, though arising in the context of a motion for transfer to a different district pursuant to Federal Rule of Criminal Procedure 21(b), the Court should be guided by the long line of decisions that acknowledge the difficulties visited upon a presumptively innocent individual forced to defend himself far from home.  As the Court noted in *United States v. Johnson*, 323 U.S. 273, 275-76 (1994):

> Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that 'The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed ...' Article III, § 2, cl. 3 ….  These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests.

*See also United States v. Muratoski*, 413 F. Supp. 2d 8, 11 (D.N.H. 2005) (stating that "it is of course a physical, emotional, and economic hardship for this defendant to face trial in New Hampshire, far from his home in Illinois") (citing *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978)); *United States v. Amador Casanas*, 233 F. Supp. 1001, 1003 (D.D.C. 1964) (noting that a transfer from Washington, D.C., to Puerto Rico was necessary in part because of the "possible embarrassment by reason of absence from their place of business for extended periods of time").

Based upon conversations with the Government, it appears that the presentation of its case-in-chief at trial will take one week, the defense anticipates the same.  For all these reasons, Mr. Singh and his son respectfully request that their trial be scheduled for December 2020, which will mark one year since they arrived in this country and were arrested.

Respectfully,

Michael Baldassare

3